# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

VALERIE R. SMITH,                    :

     Plaintiff,                    :

                         Case No. 3:15cv00384

 vs.                    :

                         District Judge Walter H. Rice

CAROLYN COLVIN,                    :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                    :

     Defendant.                    :

===============================================

# REPORT AND RECOMMENDATIONS[1]

===============================================

## I.    __Introduction__

Plaintiff Valerie Smith brings this case under 42 U.S.C. § 405(g) challenging Administrative Law Judge (ALJ) Gregory G. Kenyon's decision to deny her application for Supplemental Security Income. Contrary to ALJ Kenyon's decision, Plaintiff maintains that she is under a disability and is therefore eligible to receive Supplemental Security Income. Her mental and physical conditions include bipolar disorder, depression, bronchitis, asthma, diabetes, and carpal tunnel syndrome in both her wrists.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. # 8), the Commissioner's Memorandum in Opposition (Doc. # 11), Plaintiff's Reply, (Doc. # 12), the administrative record (Doc. # 7), and the record as a whole. Plaintiff seeks an Order

_____

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

remanding this case for an award of benefits or, at a minimum, for further proceedings. The Commissioner seeks an Order affirming ALJ Kenyon's decision.

## II.   Background

### A.   Plaintiff and Her Testimony

On May 11, 2012, Plaintiff filed an application for Supplemental Security Income asserting she was under a disability starting on January 1, 2008. On the date she filed her application, she was fifty-one years old or a person "closely approaching advanced age" as defined by Social Security regulation. 20 C.F.R. § 416.963(d). Her education falls in the "limited" range, *see id*. at § 416.964(b)(4), and she has worked over the years as a pizza cook, fast food cook, short-order cook, telephone solicitor, cafeteria server, and food-sales clerk.

During a hearing held by ALJ Kenyon in March 2014, Plaintiff testified that she treats her diabetes by testing her blood glucose levels and taking insulin shots three times a day. Her complications from diabetes include numbness and pain in her hands and legs. She described her pain as throbbing and burning. Plaintiff rated her pain severity at a level of nine on a zero-to-ten scale. She sometimes has trouble with her hands shaking "real bad" and with swelling and stiffness. (Doc. #7, *PageID* # 108). Numbness in her hands cause her to drop things, such as a salt shaker or a book.

Plaintiff acknowledged that she has a history of COPD (chronic obstructive pulmonary disease). COPD leaves her short of breath four or five times a day. To her credit, she quit smoking two months before the ALJ's hearing. She uses a nebulizer three or four times a week to help her breath. When she tries to exercise, she gets out of breath and needs to use an

inhaler. *Id*. at 119.

Plaintiff has trouble concentrating due to depression. She said that a lot of things are "real confusing," and she sometimes forgets what she was doing. *Id.* at 111. She can sometimes pay attention for thirty minutes while watching television. Plaintiff testified that she sees visions every day, describing them as "flashes" and "images. *Id.* at 112. Six or eight times a day, she hears voices calling her name. She feels paranoid when she is in a crowd of people; she feels "somebody is trying to do something to [her]." *Id.* at 112-13. She stated, I can't be around a lot of people." *Id*. at 113. She has crying spells six to seven times a week.

As to her physical abilities, Plaintiff estimated that she could lift thirty pounds two times during a day and about five pounds consistently during a day. She could stand for thirty minutes and walk about two blocks. She could only sit for thirty minutes because her feet and legs start to get numb and hurt.

Plaintiff's daily activities consist of taking care of her personal needs (for example, dressing herself and showering), washing dishes, and dusting. She tries to do other household chores but can't concentrate and gets discouraged. She likes to watch television crime dramas.

B.    **Mental Health Evidence**

**<u>Treating Psychiatrist Dr. Tasnin</u>**

Plaintiff was seen at Day-Mont Behavioral Health in June and September 2013. (Doc. #7, PageID#s 556-82). She was referred in September 2013 for a psychiatric evaluation with Royeka Tasnin, M.D. *Id.* at 548-55. Plaintiff reported feeling depressed, having mood swings, irritability, racing thoughts, anxious, decreased energy, lack of motivation, poor appetite,

3

increase sleep, poor attention and concentration.  Plaintiff admitted hearing voices and sees images and shadows.  She acknowledged her previous suicide attempt by overdose and her history of impulsive behavior.  *Id.*

On mental status examination, Dr. Tasnin indicated that Plaintiff had a depressed and anxious mood, poor insight and judgment, and impaired attention and concentration. *Id.* at 551-52.  Dr. Tasnin diagnosed Plaintiff with bipolar disorder, most recent episode depressed and severe with psychotic features; and post-traumatic stress disorder.  *Id.* at 553.

In March 2014, Dr. Tasnin reported, in a Mental Impairment Questionnaire, she had treated Plaintiff monthly since September 18, 2013.  *Id.* at 583.  She listed Plaintiff's diagnoses as bipolar disorder, most recent episode depressed, severe with psychotic features; and post-traumatic stress disorder.  Dr. Tasnin identified Plaintiff's many symptoms as poor memory; appetite disturbance with weight change; sleep disturbance; mood disturbances; emotional lability; delusions or hallucinations; recurrent panic attacks; anhedonia or pervasive loss of interests; psychomotor retardation; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; perceptual disturbances; social withdrawal or isolation; blunt, flat, or inappropriate affect; manic syndrome; intrusive recollections of a traumatic experience; persistent irrational fears; generalized persistent anxiety; and irritability.  *Id.*

Dr. Tasnin's clinical findings included psychomotor retardation in Plaintiff's speech (soft with a low tone and volume); her mood was depressed, her affect was flat; her thought content was delusional with occasional suicidal ideation; her long-term memory, attention, and

4

concentration were poor; her abstract reasoning was concrete; and her insight and judgment were fair. *Id.* at 584. Plaintiff's treatment included medications and psychotherapy. Her prognosis was "guarded because of her multiple medical conditions and limited support system." *Id.*

Dr. Tasnin opined that Plaintiff's impairments lasted or could be expected to last at least twelve months. She felt that Plaintiff would be absent from work on average more than three times per month due to her impairments or treatment. *Id.* at 585. Dr. Tasnin opined that Plaintiff was markedly restricted in her activities of daily living, and she would have extreme difficulties in maintaining social functioning; extreme deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner; and extreme episodes of deterioration or decompensation in work. *Id.*

### Jerry E. Flexman, Ph.D.

After performing a consultative psychological exam in September 2012, Dr. Flexman diagnosed Plaintiff with major depression recurrent. (Doc. #7, *PageID* # 496). Plaintiff showed appropriate affect and no lability. Her eye contact was poor ten percent of the time. She reported no suicidal ideation, but she reported a history of overdose and cutting herself in 1990s and 2000s. Dr. Flexman noted, "Ideas of reference…; she thinks people are watching her." *Id.* at 494.

Dr. Flexman opined that Plaintiff's "intellectual level of functioning, judged by the examiner, and based on vocabulary usage and understanding of discussion, was minimally within the average range of intellectual functioning." *Id.* at 496. She maintained focus and

attention on certain tasks without assistance.  Dr. Flexman believed that work pressures would not significantly increase Plaintiff's psychological problems.  As for social functioning, Dr. Flexman opined that Plaintiff would likely not have any problems relating to others in the workplace.

### State Agency Record Reviewers

After her review of the record in September 2012, psychologist Irma Johnston, Psy.D. reported that Plaintiff had medically determinable impairments of "schizophrenic, paranoid, or other psychotic disorder" and "affective disorder" but these impairments did "not precisely satisfy the diagnostic criteria of …" the Commissioner's Listing of Impairments.[2]  (Doc. #7, PageID# 154).  Dr. Johnston opined that Plaintiff was mildly restricted in her activities of daily living; moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace; with one or two episodes of decompensation.  *Id.*  Dr. Johnston found Plaintiff partially credible, noting that she alleges forty plus "inpatient stays but this treatment is not in the file."  *Id*.

In February 2013, record reviewing psychologist Karla Voyten, Ph.D., essentially affirmed Dr. Johnston's assessment.  (*Id.* at 169-70).  In determining the most mental-work activities Plaintiff could perform (her "MRFC"), Dr. Voyten found her limited to performing simple tasks, should could have no more than minimal personal contact in the workplace.  In addition, she could not be subject to production quotas.  *Id.* at 171.

---

[2] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

### C.  Plaintiff's Physical Health

### Scott Shaw, M.D.

In August 2007, Plaintiff began seeing Dr. Shaw.  Progress notes through June 2011 show Dr. Shaw treated Plaintiff for general medical care, hand pain, hypertension, bi-polar disorder, depression/anxiety, diabetes, dermatitis, and breathing complaints/asthma.  *Id*. at 437-82.

In May 2010, Dr. Shaw completed a form concerning Plaintiff's physical work abilities. He identified Plaintiff's medical conditions as bilateral ankle pain, diabetes mellitus, hypertension, asthma, and epilepsy.  *Id.* at 539.  He opined that Plaintiff could stand or walk for thirty minutes out of an eight-hour workday, fifteen minutes uninterrupted.  Dr. Shaw believed that Plaintiff could sit for one hour out of an eight-hour workday, thirty minutes uninterrupted.  She could never lift more than ten pounds. She was extremely limited in bending, reaching, handling, and repetitive foot movements.  Dr. Shaw concluded that Plaintiff was unemployable for a period of twelve months or more.  *Id.* at 540.

### Kwasi Nenonene, M.D.

Plaintiff transferred her primary care to Dr. Nenonene in June 2011. Dr. Nenonene treated Plaintiff for depression, diabetes, dermatitis, hypertension, along with back, knee, and neck pain.  *Id.* at 589-98.  When seen for a checkup and medication refills in October 2012, Dr. Nenonene noted that Plaintiff's diabetes, low-back pain, hypertension and asthma were stable with medication.  *Id.* at 592.

7

Dr. Nenonene completed a form in September 2013 in which he opined that Plaintiff could stand, walk or sit for four hours out of an eight-hour workday, two hours uninterrupted. He thought that Plaintiff could never lift more than ten pounds. Dr. Nenonene further opined that Plaintiff was moderately limited in pushing, pulling and reaching. Dr. Nenonene concluded that Plaintiff was unemployable for a period of twelve months or more. *Id.* at 542-44. Dr. Nenonene also completed a form concerning Plaintiff's mental work abilities. He indicated that Plaintiff was moderately limited in most functional areas and unemployable for a period of twelve months or more. *Id.* at 545.

### Amita Oza, M.D.

Dr. Oza examined Plaintiff in August 2012 for the state agency. (Doc. #7, *PageID#* 484-90). Dr. Oza diagnosed Plaintiff with diabetes since age seventeen and hypertension at age thirty-nine. Plaintiff told Dr. Oza that she checked her blood sugars three to four times per day. She was taking Risperdal, insulin, and Losartan for her blood pressure. She reported tingling and numbness in her feet and hands. She said that she could stand for twenty minutes and walk for thirty minutes or sit for an hour before her peripheral-neuropathy pain gets worse.

On examination, Dr. Oza found diminished sensations in Plaintiff's lower extremities in stocking distribution. Dr. Oza opined that Plaintiff's blood pressure was under good control, but her diabetes seemed out of control. Dr. Oza noted that he was not sure Plaintiff was taking her insulin as directed. Dr. Oza also noted that Plaintiff had diabetic peripheral neuropathy and a history of hepatitis C. Dr. Oza concluded, "it is her psychiatric problems that would prevent her from working. I am not sure about her control of diabetes." *Id.* at 486.

8

**State Agency Reviewers**

In September 2012, state agency physician Rannie Amiri, M.D. reviewed the record and assessed Plaintiff's physical work abilities.  (Doc.# 7, *PageID#*#156-58).  Dr. Amiri opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently.  She could stand/walk for six hours out of eight, and sit for six hours out of eight.  *Id.* at 156.  Dr. Amiri found that Plaintiff would be limited to only frequent operation of bilateral foot controls due to diabetic peripheral neuropathy.  Dr. Amiri also found that Plaintiff could never climb ladders/ropes/scaffolds or crawl; frequently climb or stoop; and only occasionally balance.  Dr. Amiri found it reasonable to limit Plaintiff to frequent bilateral upper-extremity fingering due to her history of bilateral carpel tunnel syndrome.  *Id.* at 157.  Due to asthma, Plaintiff should avoid concentrated exposure to environmental irritants.  Dr. Amiri also believed that due to diabetic neuropathy, Plaintiff should avoid commercial driving, operating dangerous machinery and unprotected heights.  *Id.* at 158.

In February 2013, state agency physician Teresita Cruz, M.D. reviewed the file and determined there was insufficient evidence to assess Plaintiff because she had not attended a consultative examination, and she had not responded the agency's request to reschedule.  *Id.* at 169.

## III.  Supplemental Security Income and The ALJ's Decision

The Social Security Administration provides Supplemental Security Income to indigent individuals, subject to several eligibility requirements.  Chief among these is the "disability" requirement.  To receive Supplemental Security Income, an applicant must be a "disabled

individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).

The phrase "disabled individual" encompasses only those who suffer from a medically

determinable physical or mental impairment severe enough to prevent them from engaging in

substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

ALJ Kenyon's determination that Plaintiff was not under a disability arose from his

five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). He concluded,

in pertinent part, that Plaintiff had the severe impairments of carpal tunnel syndrome, COPD,

diabetes mellitus, a history of seizures, episodic gout, and depression. He further found that

Plaintiff's impairments fell short of being a disability under the Commissioner's Listings of

Impairments; she retained the residual functional capacity, *see* 20 C.F.R. § 416.945(a), to

perform light work with many limitations;[3] and she could do a significant number of jobs that

are available in the national economy, such as mail clerk, marker, and warehouse checker.

These findings led the ALJ to conclude, as previously noted, that Plaintiff was not under a

disability and hence not eligible for SSI. *Id.* at 80-92.

## IV. <u>Standard of Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by

---

[3] The ALJ found Plaintiff's ability to perform light work limited to (1) no crawling or climbing of ladders, ropes, or scaffolds; (2) occasional balancing; (3) occasional use of the lower extremities for pushing, pulling, and operating foot controls; (4) no work around hazards such as unprotected heights or dangerous machinery; (5) no concentrated exposure to respiratory irritants; (6) frequent use of the hands for handling and fingering; (7) limited to performing unskilled, simple, repetitive tasks; (8) occasional contact with co-workers, supervisors, and the public; (9) no fast paced production work or jobs involving strict production quotas; and (10) limited to performing jobs in a relatively static environment in which there is very little, if any, change in the job duties or the work routine from one day to the next. (Doc. #7, *PageID* #82).

substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, resolving whether the ALJ applied the correct legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "(E)ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

11

## V.    Discussion

### A.    Medical Source Opinions

The ALJ placed little weight on the opinions of Plaintiff's treating medical sources Drs. Nenonene, Tasnin, and Shaw.  The ALJ placed great weight on the opinions provided by one-time examining psychologist Dr. Flexman, record-reviewing psychologist Dr. Johnston, and one-time examiner Dr. Oza.

Plaintiff argues that the ALJ failed to properly weigh the opinions provided by Dr. Nenonene, Dr. Shaw, and Dr. Tasnin.  She asserts that their opinions should have been given controlling weight, that the ALJ failed to properly evaluate their opinions for deferential weight, and failed to apply "good reasons" for rejecting their opinions.

Social Security regulations require ALJs to give the opinion of a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  "Even if [a] treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion…is entitled to great deference."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotations and citations omitted).  This rebuttable presumption requires ALJs to continue to weigh treating source opinions under certain factors:  the length of the treatment relationship, frequency of examination, specialization of the treating source,

12

supportability of the opinion, and consistency of the opinion with the record as a whole. 20 C.F.R. §§ 416.927(c)(1)-(6); *see Bowen*, 478 F.3d at 747.

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions by stating "specific reasons for the weight placed on a treating source's medical opinions ...." *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (1996)). The ALJ's reasons must be "supported by the evidence in the case record ...." *Id*. The goals are to assist the claimant in understanding the disposition of his or her case and to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.*

ALJs must likewise consider the regulatory factors when weighing the opinions provided by non-treating, consulting, and record-reviewing medical sources. *Miller v. Comm'r of Soc. Sec*., 811 F.3d 825, 836-37 (6th Cir. 2016).

In the present case, the ALJ placed little weight, rather than controlling or deferential weight, on the opinions provided by Dr. Nenonene. The ALJ found his opinions "generally unsupported by objective signs and findings in the preponderance of the record." (Doc. #7, *PageID* #88). The ALJ observed that Dr. Nenonene's progress notes "do not portray the claimant as being limited to the extent he alleges." *Id*. The ALJ placed no weight on Dr. Nenonene's opinions about Plaintiff's mental functioning

because the ALJ viewed his status as a family physician, not a mental-health provider, made him unqualified to offer an opinion on Plaintiff's mental functioning.

Plaintiff contends the ALJ improperly rejected Dr. Nenonene's finding that she could only stand or walk for a total of four hours in an eight-hour workday and that she could lift no more than ten pounds.  This contention lacks merit because the ALJ gave good reasons for rejecting his opinion about these restrictions.  As the ALJ pointed out, although Plaintiff did have some diabetic neuropathy affecting her lower extremities, the objective evidence showed that it was not so severe to limit her to standing or walking for only four hours in an eight-hour day.  (Doc. #7, *PageID* #88).  Dr. Nenonene's progress notes did not refer to objective medical evidence to support this opinion and his notes did not otherwise indicate that she had limitations consistent with or supporting his restrictive opinion.  His treatment notes between June 2011 and September 2013 documented no significant abnormalities in Plaintiff's extremities, though she did complain of pain on several occasions.  *Id*. at 590-98.  In addition, in October 2012, Dr. Nenonene indicated that Plaintiff's diabetes was controlled with medication.  *Id*. at 592.

In the form Dr. Nenonene completed about Plaintiff's physical limitations, he provided some brief notes without reference to any particular medical sign or finding that supported his opinion that Plaintiff was limited in her ability to walk and stand, or could only lift up to ten pounds.  Dr. Nenonene merely noted, without elaboration, that his opinions were based on "physical exams during office visits & consultative input."  *Id*. at

14

543. These shortcomings justify placing little weight on Dr. Nenonene's opinions. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion…."); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJ's.").

Plaintiff points to some objective findings as support for Dr. Nenonene's opinion about her limited ability to stand and walk. While it is true a podiatrist found Plaintiff had diminished pulses, diminished sensation, and slow-capillary refill upon testing, *see* Doc. #7, *PageID* #s 529, 534, these findings would at best constitute some substantial evidence supporting Dr. Nenonene's opinions. Yet, Plaintiff's reliance on this evidence runs headlong into the principal that as long as substantial evidence supports the ALJ's findings, the Court defers to those findings "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The ALJ, moreover, considered these treatment notes and reasonably concluded that these findings were consistent with his assessment of Plaintiff's residual functional capacity to be at a reduced range of light work. *Id.* at 84.

In the form Dr. Nenonene completed about Plaintiff's mental functioning, he checked boxes indicating that she was moderately limited in all areas except for her ability to remember locations and work-like procedures, which was not significantly limited. *Id*. at 545. He did not find her markedly limited in any area. These findings did not support, and were inconsistent with, Dr. Nenonene's decision to check boxes indicating his opinion that Plaintiff was unemployable for twelve month or more. *See id*. Dr. Nenonene also did not provide any explanation of his opinion that Plaintiff was unemployable for twelve months or more, and he did not attach a copy of a mental examination report, as the form requested. *Id*. at 545-46. This creates a reasonable inference that he did not perform one. Given these shortcomings, the ALJ was not obliged to place controlling or deferential weight on Dr. Nenonene's belief that Plaintiff was unemployable due to limitations in her mental functioning. *See* 20 C.F.R. § 416.927(c)(2)-(4).

The ALJ also reasonably relied on the opinions of Dr. Oza, a consultative examiner who noted that Plaintiff had diminished sensation in her lower extremities. Dr. Oza otherwise documented Plaintiff's unremarkable physical exam. *Id*. at 84, 87, 484-90. And the ALJ relied on the opinions of the record-reviewing physician Dr. Amiri, who opined in September 2012 that Plaintiff retained the ability to perform light work. *Id*. at 87, 156-58. Though Dr. Amiri did not have access to Dr. Nenonene's opinions, she did have access to Dr. Oza's exam results as well as treatment records from Dr.

16

Nenonene pre-dating September 2012.  Further, there is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record…," as Plaintiff contends.  *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting Soc. Sec. R. 96-6p, 1996 WL 374180, *2 (1996)).  As a result, the ALJ's decision to place greater weight on these non-treating physicians than on Dr. Nenonene's opinions was warranted.

Plaintiff next argues that the ALJ violated *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) by failing to maintain the ten-pound-lifting restriction found in a prior ALJ's assessment of Plaintiff's residual functional capacity.  *Drummond*, however, does not assist Plaintiff.

*Drummond*, requires an ALJ to adopt the findings of a prior ALJ unless there is new and material evidence documenting a change in a claimant's condition.  *Id*. at 842; *see* Acquiescence Ruling 96-4(6), 1998 WL 283902 (June 1, 1998).  The earlier ALJ's decision (in September 2010) did indeed limit Plaintiff to lifting ten pounds.  But, the explicit reason the ALJ provided for setting this limit was the possible recurrence of Plaintiff's carpal tunnel syndrome.  (Doc. #7, *PageID* #135).  In the instant case, as ALJ Kenyon accurately observed, the newly submitted evidence showed "no significant findings related to carpal tunnel syndrome, and the claimant has not complained of or sought treatment for this condition."  *Id*. at 87.  Therefore, ALJ Kenyon reasonably concluded that the previous ALJ's assessment of how much Plaintiff could lift was

unnecessarily restrictive in light of the new evidence, and he reasonably determined that Plaintiff could lift up to twenty pounds occasionally. *Id*. at 82, 87. Furthermore, as discussed above, this restriction was supported by Dr. Amiri's opinions. *See id*. at 156; *see also* 20 C.F.R. § 416.927(e)(2)(i) (State agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

Plaintiff maintains that the ALJ erred in rejecting Dr. Nenonene and Dr. Shaw's opinion that she was "unemployable." She challenges the ALJ's reason—*i.e.*, the issue of whether Plaintiff was unemployable is reserved to Commissioner. However, the ALJ did not reject the entirety of Dr. Nenonene's and Shaw's opinions on the ground that they believed Plaintiff was unemployable. Rather, the ALJ discounted their opinions for this reason by giving them "little weight." (Doc. #7, *PageID* #s 88-89). This did not constitute error. *See* 20 C.F.R. § 416.927(d)(2)-(3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("no 'special significance' will be given to opinions of disability, even if they come from a treating physician." (citing, in part, Soc. Sec. R. 96–5p, 1996 WL 362206 (July 2, 1996)).

Plaintiff next finds significant errors in the ALJ's evaluation of Dr. Tasnin's opinions. She argues that the ALJ failed to provide one legitimate good reason for rejecting Dr. Tasnin's opinions. She first finds error in the ALJ's observation that Dr. Tasnin had "only" seen Plaintiff since September 2013. Plaintiff explains that Dr. Tasnin

provided his opinions in March 2014 and had treated monthly, thus seeing him on

approximately seven occasions.  However, the length and frequency of treatment

constituted a valid consideration when weighing Dr. Tasnin's opinions.  *See* 20 C.F.R. §

416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more

times you have been seen by a treating source, the more weight we will give to the

source's medical opinion….").  And, it was not unreasonable for the ALJ to discount Dr.

Tasnin's opinion based on the relatively small number of occasions he had seen Plaintiff

between September 2013 and March 2014.

The ALJ's second reason for discounting Dr. Tasnin's opinions was that "the

objective signs and findings in the preponderance of the record, specifically in the

progress notes from Daymont…, do not portray the claimant as nearly as disabled as Dr.

Tasnin alleges."  (Doc. #7, *PageID* # 90).  This was error, according to Plaintiff, based on

the quotation from *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989), which partly

explains:

> [W]hen mental illness is the basis of a disability claim, clinical and
> laboratory data may consist of the diagnosis and observations of
> professionals trained in the field of psychopathology.  The report of a
> psychiatrist should not be rejected simply because of the relative
> imprecision of the psychiatric methodology or the absence of substantial
> documentation, unless there are other reasons to question the diagnostic
> techniques.

874 F.2d at 1121 (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987))

(other citation omitted).  Although the ALJ referred to objective signs and findings, he

did not make the error of rejecting Dr. Tasnin's opinions due to the absence of those signs. He instead compared the objective signs and findings in the progress notes from Daymont Behavioral and found them unsupportive of Dr. Tasnin's opinions. The ALJ also correctly recognized that the record contains "comparatively little evidence of psychiatric treatment. Despite complaints of hallucination, there have been no psychiatric hospitalizations and the claimant has had full contact with reality at all times relevant to this case." (Doc. #7, *PageID* #90). Although Plaintiff takes issue with these observations, the record indeed contains comparatively little evidence of psychiatric treatment. Records from Day-Mont Behavioral contain some information about Plaintiff's mental health at two different times: June 2013 and September 2013. *Id*. at 548-82. Day-Mont records from March 2014 consist of a two-page release form containing no meaningfully probative information about Plaintiff's mental health. The Day-Mont records also contain one-page disclosure form with no medical information. *Id*. at 547. Although the record contains the questionnaire Dr. Tasnin completed and his initial psychiatric evaluation, it does not contain his treatment records concerning Plaintiff. She counters that the record indicates she received treatment at Day-Mont from 1997 to 2011, with a resumption of treatment in 2013. The two pages of the record Plaintiff cites to (Doc. #8, *PageID* #615) contain no records from 1997 to 2011 and, instead, contain her report of such treatment plus a note indicating, "referred from Daymont" without describing any treatment she received there. *Id*. at 573, 582. And, the

20

administrative record contains no medical evidence or records from 1997 to 2011.  Given

the minimal information in the record about Plaintiff's mental health treatment,

substantial evidence supports the ALJ decision to discount Dr. Tasnin's opinions due to

the "comparatively little evidence of psychiatric treatment."  *Id*. at 90.

      Plaintiff contends that the ALJ erred by rejecting Dr. Tasnin's opinions as

inconsistent with his assessments of her GAF scores.  The ALJ's limited use of GAF

scores as a reason to discount Dr. Tasnin's opinions was not error because Dr. Tasnin

was the source of the GAF scores.  The ALJ correctly recognized the inconsistency

between the moderate GAF scores Dr. Tasnin set and "with his assessment for marked to

extreme limitation."  *Id*.; *see Miller v. Comm'r of Soc. Sec*., 811 F.3d 825, 836 (6th Cir.

2016) ("We take a case-by-case approach to the value of GAF scores….").

      Accordingly, for the above reasons, Plaintiff's challenges to the ALJ's assessment

of the medical source opinions of record lack merit.

      **B.**    **Plaintiff's Credibility**

      Plaintiff contends that the ALJ failed to properly evaluate her credibility as

required by the Regulations and Sixth Circuit case law.

      In making a determination of disability, "an ALJ is not required to accept a

claimant's subjective complaints and may properly consider [the claimant's] credibility."

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  However, a claimant's

subjective statements may "support a claim for disability, if there is also objective

medical evidence of an underlying medical condition in the record." *Id.* at 475-76 (emphasis added).

The Court must "accord the ALJ's determination of credibility great weight and deference particularly since the ALJ has the opportunity ... of observing [the claimant's] demeanor while testifying."  *Id.*  However, to appropriately evaluate the credibility of the claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Soc. Sec. R. 96-7p, 1996 WL 374186, at *1 (July 2, 1996).[4]

Plaintiff contends that the ALJ erred in his credibility assessment by finding her statements unsupported by objective medical evidence, by finding that her lack of treatment was inconsistent with her allegations, and by relying on her daily activities.

Plaintiff, however, reads the ALJ's credibility determinations too narrowly.  It is not an error for an ALJ to consider together that the lack of supporting objective evidence, lack of treatment, and a claimant's daily activities as reasons for discounting

---

[4] Effective March 28, 2016, Soc. Sec. R. 16–3p, 2016 WL 1119029 (Mar. 16, 2016), superseded Ruling 96–7p.  But, Ruling 16-3p does not apply retroactively to the ALJ's decision concerning Plaintiff's application for benefits.  *See Kitchen v. Colvin*, 2017 WL 395087, at *9 n.4 (M.D. Tenn., Jan. 30, 2017).

credibility.  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Soc. Sec. R. 96-7p, 1996 WL 374186, at *5.  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted). Although, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence…," Soc. Sec. R. 96-7p, 1996 WL374186 at *1.

In the present case, the ALJ did not discount Plaintiff's credibility for the sole reason that her statements were not substantiated by objective medical evidence.  Instead, the ALJ considered this shortcoming along with inconsistency between some of Plaintiff's own statements, including statements made to certain medical sources, and her daily activities.  Doing so, the ALJ applied the correct legal criteria. *See Jones*, 336 F.3d at 476; *see also Walters*, 127 F.3d at 531; 20 C.F.R. § 416.929(c)(3).

Examples of Plaintiff's inconsistencies include that she reported to a consultative examiner that she did not use alcohol and had no history of substance abuse.  (Doc. #7, *PageID* #s 86, 493).  She later acknowledged that she had a history of daily alcohol use for many years and that her alcohol dependence was in full remission. *Id*. at 568-69. Plaintiff also made inconsistent statements about why she did not have a driver's license

23

and her educational background. *Id*. at 86, 493. Further, the consultative examiner noted that Plaintiff was unmotivated and evasive during his evaluation. *Id*. at 494. The ALJ properly considered these inconsistent statements in evaluating Plaintiff's credibility.

The ALJ also properly noted that Plaintiff's activities of daily living were inconsistent with her claims of total disability. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 96-7p (an ALJ may consider statements about a claimant's daily activities while assessing credibility); *see also Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) (as a matter of law, the ALJ may consider the claimant's household and social activities in evaluating his assertions of pain or limitations). At her consultative examination in September 2012, Plaintiff reported that she was "able to take care of all daily activities on her own." (Doc. #7, *PageID* # 493). She stated that she prepared food throughout the day, did laundry, dishes, dusting, sweeping, and general cleaning, went to the store once or twice a week, went out to eat, and talked with friends, and visited her children and siblings. *Id*. In June 2013, she reported that she sometimes attended church. *Id*. at 563.

Plaintiff argues that the ALJ improperly equated these daily activities with the demands of fulltime work. This is incorrect. The ALJ did not conclude that Plaintiff could work because she could perform basic daily activities; instead, he reasonably concluded that Plaintiff's allegations of disabling symptoms and limitations were inconsistent with her activities of daily living. *Id*. at 86. This did not constitute error. *See* Soc. Sec. R. 96-7p. 1996 WL374186, *1, *5; *see also Walters*, 127 F.3d at 531.

24

The ALJ also properly noted that Plaintiff's treatment history was inconsistent with a finding of disabling mental-health symptoms. (Doc. #7, *PageID* # 85).  Plaintiff correctly notes that, in some circumstances, the failure to seek mental health treatment may say little about a claimant's credibility.  However, here, there is no indication that she did not seek treatment as a result of her impairments.  Therefore, the ALJ reasonably considered that her failure to obtain treatment could indicate that her symptoms were not as serious as alleged.  *Id.; see* 20 C.F.R. § 416.929(c)(3)(v) (the treatment a claimant has received for their impairments is a factor relevant to a claimant's credibility).  The ALJ also reasonably considered that Plaintiff reported "actively" looking for work and that she had a sporadic work history before she asserted she was under a disability.  *Id*. at 86-87. The ALJ reasonably inferred that this inconsistent work history, and Plaintiff's continued attempts to find work even when she alleges she was disabled, casted doubt on her assertion that she stopped working on her asserted disability onset date solely due to her impairments.

Relying on Seventh Circuit case law, such as *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), Plaintiff contends that the ALJ used the wrong standard to evaluate her credibility and that he erred by using boilerplate language. Plaintiff is correct to the extent she argues that *Bjornson* and her other cases cogently criticize an ALJ's use of template or boilerplate credibility language.  *See id*. at 645.  But, the Seventh Circuit does not automatically reverse an ALJ's credibility findings when the ALJ includes boilerplate

credibility language in his or her decision.  For example, eight months after *Bjornson*, the Seventh Circuit re-affirmed *Bjornson's* reasoning, it clarified that an ALJ's use of credibility boilerplate language is not always fatal to the ALJ's decision.  The Seventh Circuit explained, "In *Bjornson*, this flaw required us to reverse and remand, but that is not always necessary.  If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."  *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (upholding credibility determination where ALJ offered reasons grounded in evidence); *see Pepper v. Colvin*, 2013 WL 1338123 at *14 (7th Cir. 2013) ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination.").  This is consistent with unpublished Sixth Circuit case law. *See Cox v. Comm'r of Soc. Sec.*,  615 F. App'x 254, 260 (6th Cir. June 11, 2015) ("We likewise consider the boilerplate unhelpful and poorly worded.  Our chief concern with the popularity of this template, however, is the risk that an ALJ will mistakenly believe it sufficient to *explain* a credibility finding, as opposed to merely introducing or summarizing one." (emphasis in original)).

In the present case, the ALJ included the problematic credibility boilerplate discussed in *Bjornson* by stating:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could reasonably
> be expected to cause some of the alleged symptoms.  However, the
> claimant's statements concerning the intensity, persistence and limiting

> effects of these symptoms are not credible to the extent they are
> inconsistent with the above residual functional capacity assessment, for the
> reasons stated in this decision.

(Doc. #7, *PageID* # 83).  Yet, the reasons the ALJ stated in his decision, as discussed

above, suffice to show that he applied the correct legal criteria when evaluating Plaintiff's

credibility, and substantial evidence supported his credibility findings.  Deference is

therefore due his credibility determinations.  *Walters*, 127 F.3d at 531.

Accordingly, Plaintiff's challenges to the ALJ's credibility determination lack

merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The ALJ's decision denying the application for Supplemental Security
    Income that Plaintiff filed on May 11, 2012 be affirmed; and

2.  The case be terminated on the Court's docket.

February 1, 2017                              *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge

27

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).